FILED

1  Kenneth J. Catanzarite, Esq. (SBN 113750)
2  **CATANZARITE LAW CORPORATION**
   2331 West Lincoln Avenue
3  Anaheim, CA 92801
   Tel: (714) 520-5544
4  Fax: (714) 529-0680
5  kcatanzarite@catanzarite.com

6  Laurence Rosen, Esq. (SBN # 219683)
7  Phillip Kim, Esq.
   **THE ROSEN LAW FIRM, P.A.**
8  350 Fifth Avenue, Suite 5508
9  New York, New York 10118
   Tel: (212) 686-1060
10 Fax: (212) 202-3827
11 lrosen@rosenlegal.com

12
   Counsel for Plaintiff
13

2009 JUL 24  PM 1:46

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

14          UNITED STATES DISTRICT COURT
15          CENTRAL DISTRICT OF CALIFORNIA
                  WESTERN DIVSISION
16

17 TOM SHEPARDSON, individually and on      ) NO. CV09-5416      GHK
   behalf of all others similarly situated ,                       (RZx)
18                                          )
                                            )
19             Plaintiff,                   ) CLASS ACTION
                  vs.                       ) COMPLAINT FOR
20 SKILLED HEALTHCARE GROUP, INC.;          ) VIOLATION OF THE
21 BOYD HENDRICKSON; JOHN E. KING;          ) FEDERAL SECURITIES
   DEVASIS GHOSE; CREDIT SUISSE             ) LAWS
22 SECURITIES, LLC; BANC OF AMERICA         )
23 SECURITIES LLC; GOLDMAN, SACHS           )
   & CO.; J.P. MORGAN SECURITIES,           ) JURY TRIAL DEMANDED
24 INC.; THE BEAR STEARNS                   )
25 COMPANIES, INC.; RBC CAPITAL             )
   MARKETS CORPRATION; and SCOTIA           )
26 CAPITAL (USA), INC.,                     )
27                                          )
                                            )
28             Defendants.                  )

                           1

Plaintiff Tom Shepardson, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding  Skilled Healthcare Group, Inc., ("SKH", or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.   Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of two classes: (1) all persons other than defendants who purchased the Class A common stock of SKH pursuant and/or traceable to the Company's Registration Statement and Prospectus issued in connection with the Company's Initial Public Offering (the "IPO") on May 14, 2007, including purchasers through August 5, 2008, seeking to recover damages caused by defendants' violations of federal securities laws and to pursue remedies under the Securities Act of 1933 (the "Securities Act"); and (2) all persons other than defendants who purchased the Class A common stock of SKH between May 14, 2007 and June 9, 2009, inclusive for violations of the federal securities laws and to pursue remedies under the Securities Exchange Act of 1934 ("Exchange Act").

//

//

//

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2) and 77(o)) and Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. §77v(a), Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Section 27 of the Exchange Act (15 U.S.C. §78aa), and 28 U.S.C. § 1391(b).

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff Tom Shepardson, as set forth in the accompanying certification, incorporated by reference herein, purchased SK stock pursuant to or traceable to the Company's IPO and was economically damaged thereby.

7.     Defendant SKH is a Delaware corporation with its principal place of business located in Foothill Ranch, CA 92610.  SKH provides integrated long-term healthcare services in the United States through certain facilities it manages and/or owns.  During the Class Period the Company's Class A common stock was listed on the New York Stock Exchange under ticker "SKH."

//

//

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

8.    Defendant Boyd Hendrickson ("Hendrickson") was and is at all relevant times the Chairman and CEO of the Company.

9.    Defendant John E. King ("King") served as the Company's CFO and Treasurer from the beginning of the Class Period until his departure from the Company on or about March 2008.

10.    Defendant Devasis Ghose ("Ghose") was and is the Company's CFO from March 2008 to present.

11.    Hendrickson, King and Ghose are collectively referred to hereinafter as the "Individual Defendants."

12.    Defendant Credit Suisse Securities LLC ("Credit Suisse"), is an investment bank and served as one of the lead underwriters for the IPO. Credit Suisse is a Delaware LLC, headquartered in New York City, and maintains offices and conducts business in Los Angeles County, CA.

13.    Defendant UBS Securities LLC ("UBS"), is an investment bank and served as one of the lead underwriters for the IPO. UBS Securities is a Delaware LLC, with its principal executive offices in Connecticut, and maintains offices and conducts business in Los Angles County.

14.    Defendant Banc of America Securities LLC ("BAC"), is an investment bank and served as one of the lead underwriters for the IPO. BAC is a Delaware LLC headquartered in North Carolina. BAC maintains offices and conducts business in Los Angeles County.

15.    Defendant The Bear Stearns Companies ("Bear Stearns"), through its subsidiaries, is an investment bank and served as an underwriter for the IPO. On May 30, 2009, a wholly-owned subsidiary of JPMorgan Chase & Co. merged with, and into, Bear Stearns, with Bear Stearns continuing as the surviving corporation and as a wholly-owned subsidiary of JPMorgan & Chase Co. Bear Stearns maintains a principal office and conducts business in Los Angeles County.

16.    Defendant Goldman, Sachs & Co. ("Goldman"), is an investment bank and served as an underwriter for the IPO. Goldman is headquartered in New York and maintains offices and conducts business in Los Angeles County.

17.    Defendant J.P. Morgan Securities, Inc. ("JP Morgan"), is an investment bank and served as an underwriter for the IPO. JP Morgan is headquartered in New York and maintains offices and conducts business in Los Angeles.

18.    Defendant RBC Capital Markets Corporation ("RBC"), is an investment bank and served as an underwriter for the IPO. RBC maintains offices and conducts business in Los Angeles County.

19.    Defendant Scotia Capital (USA), Inc.("Scotia"), is an investment bank and served as an underwriter for the IPO. Scotia conducts business in Los Angeles and maintains offices in New York.

20.    Credit Suisse, UBS, BAC, Bear Stearns, Goldman, JP Morgan, RBC, and Scotia are collectively referred to herein as the "Underwriters."

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action on behalf of himself and two classes: (1) all persons other than defendants who purchased the Class A common stock of SKH pursuant and/or traceable to the Company's Registration Statement and Prospectus issued in connection with the Company's IPO on May 14, 2007, including purchasers through August 5, 2008, seeking to recover damages caused by defendants' violations of Sections 11 and 15 of the Securities Act (the "Securities Act Class"); and (2) all persons other than defendants who purchased the Class A common stock of SKH between May 14, 2007 and June 9, 2009, inclusive, for violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 thereunder ("Exchange Act Class"). Both Classes are referred to as the "Class."

//

22.     The members of the Class are so numerous that joinder of all members is impracticable.  Approximately 16 million shares of the Company's common stock were sold in the IPO.  The precise number of the Class members is unknown to Plaintiff at this time but it is believed to be in the thousands. Members of the Class may be identified from records maintained by SKH or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

23.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

24.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

25.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the provisions of the Securities, and Exchange Acts were violated by defendants' acts as alleged herein;

(b)     whether documents, including the Registration Statement and Prospectus, press releases, and public statements issued by defendants to the investing public committed and/or misrepresented material facts about the Company and its business; and

(c)     the extent to which members of the Class have sustained damages, and the proper measure of damages.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual

6

litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

## COUNT I

**Against SKH, Hendrickson, King, and Underwriters For Violation of**

**Section 11 of the Securities Act on**

**Behalf of the Securities Act Class**

27. Plaintiff incorporates by reference each and every allegation contained above, as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or intent of the defendants to defraud Plaintiff or members of the Securities Act Class.

28. This Count is asserted against Defendants SKH, Hendrickson, King, and the Underwriters ("Count I Defendants").

29. This Count is predicated upon Count I Defendants' strict liability for making false and misleading statements of material fact in the Registration Statement/Prospectus issued in connection with the Company's IPO.

30. At the end of 2006 and continuing through the first quarter of the 2007, the Company prepared to commence an initial public offering of its Class A common stock, by filing drafts of registration statements with the SEC.

31. On May 10, 2007, the Company filed with the SEC its sixth amended registration statement with the SEC on Form S-1/A. The Registration Statements contained, among other things, a Prospectus.

32. On May 14, 2007 at 1:15 p.m. the SEC declared the Registration Statement effective. The Registration Statement was signed by Defendants Hendrickson and King.

33. On May 16, 2007 the Company filed its final Prospectus with the SEC in connection with the Company's IPO, which involved the sale

7

1  16,666,666 shares of Class A common stock of the Company for $15.50 per
2  share.  Of that, 8,333,333 shares were offered by the Company and the balance
3  was offered by certain selling shareholders, which included numerous members
4  of the Company's management.    Total proceeds from the IPO were
5  approximately $258 million.  Net of fees, the Company and selling shareholders
6  each received approximately $120 million.

7        34.    Certain representations made in the Company's Registration
8  Statement and Prospectus in connection with the IPO were false or misleading,
9  because (a) the financial statements in the Registration Statement and
10  Prospectus, which included, among other things, the Company's results for the
11  First Quarter of 2007 and Fiscal Year 2006, including the Company's net
12  income for those periods and interim quarterly information were false and
13  violated Generally Accepted Accounting Principles; and (b) Defendants
14  misrepresented the Company's internal controls on financial reporting.

15        35.    The foregoing matters, all of which existed at the time of the IPO,
16  were partially revealed by the Company in an announcement it issued on June
17  9, 2009 after market close.  The announcement states in relevant part:

18        Skilled Healthcare Group Announces Expected Financial
         Restatement Related to Accounts Receivable Reserves
19
20        FOOTHILL RANCH, Calif. — (BUSINESS WIRE) — June 9,
         2009 — Skilled Healthcare Group, Inc. (NYSE: SKH) today
21        announced that, based on a preliminary review by management,
22        the Company expects to restate its consolidated financial
         statements for the quarterly and annual periods from January 1,
23        2006 through March 31, 2009. As a result, the Audit Committee of
24        the Board of Directors today has concluded that investors should
         no longer rely on the Company's historical financial statements nor
25        the reports of Ernst & Young LLP, the Company's independent
26        registered public accounting firm, for those affected periods.

27        //

28        //

The expected restatement relates to understated reserves for accounts receivables in each of the affected quarters. Based on the Company's preliminary analysis, the Company expects that the correction of the understatement is likely to require cumulative charges against after-tax earnings in the aggregate amount of between $8 million and $9 million over the affected periods. The actual amounts of the adjustments to be made in each of the affected periods are being determined by management. The adjustments will be audited by year and reviewed by quarter by Ernst & Young LLP.

Management identified the errors through an internal review of its reserves for accounts receivable. The errors appear to have resulted from improper dating of accounts receivables by a former employee who appears to have acted in ways that were inconsistent with the Company's accounting policies and practices. With the oversight of the Audit Committee, the Company has initiated a special investigation with respect to the areas in which the former employee was involved, as well as a review of what steps, if any, may be appropriate to ensure future compliance with the Company's accounting policies and practices relating to accounts receivable reserves.

The Company will file its restated financial statements with the Securities and Exchange Commission as soon as practicable following completion of the Audit Committee's investigation. The Company is updating its 2009 full year guidance solely to reflect the correction in its accounts receivable reserves. The Company now expects full year EBITDA to be between $121 million and $126 million and EBITDAR to be between $140 million and $145 million. Earnings per diluted share are expected to be between $1.02 and $1.08. EBITDA and EBITDAR reflect the non-GAAP adjustments to net income that are detailed in the table below, which reconciles forecasted net income to forecasted EBITDA and EBITDAR.

36.    The June 9, 2009 announcement caused the Company's stock to fall from a prior closing price of $8.34 to $7.58, or 9.11% on June 10, 2009.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

37.    On June 29, 2009, the Company filed with the SEC an amended annual report on Form 10-K with the SEC for the fiscal year ("FY") ended December 31, 2008 (the "Restated 10-K"). The 10-K contained the Company's restatement adjustments for the Company's fiscal years ended December 31, 2008, 2007 and 2006, and the interim quarterly periods. The 10-K revealed, among other things, the following misstatements in the Registration Statement and Prospectus:

(a)    net income for the FY 2006 originally reported at $17.3[1] million was actually $14.8 million, and net loss per share originally reported at $.09 per share was actually $.31 per share; and

(b)    net income for the first quarter ended March 31, 2007 originally reported $4.7 million was actually $3.9 million, and net loss per share originally reported at $.01 per share was actually $.07 per share.

38.    Plaintiff and other members of the Securities Act Class acquired their SKH stock without knowledge of the untruths and/or omissions alleged herein. Plaintiffs and other members of this Class were thus damaged by Count I Defendants' negligence or misconduct by the misstatements and omissions of material fact in the aforementioned Registration Statement/Prospectus. As a direct and proximate result of the Count I Defendants' negligent or wrongful conduct, the price of SKH's Class A common stock sold in the IPO was artificially inflated and Plaintiff and the Securities Act Class suffered substantial damages pursuant to or traceable to their purchase of SKH Class A common stock.

39.    Each of the Count I Defendants, caused to be issued and participated in the issuance of the misstatements and omissions of material fact to the investing public. By reasons of the conduct alleged herein, each Count I

---

[1] The Company rounded the actual numbers up in their amended 10-K.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

40.     SKH is the issuer of the stock sold via the Registration Statement and Prospectus.  As issuer of stock, the Company is strictly liable to Plaintiff and the Securities Act Class for the material misstatements and omissions therein.

41.     Count I Defendants owed to the purchasers of the stock obtained through the Registration Statement and Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.

42.     None of the Count I Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

43.     This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement and Prospectus that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement and Prospectus.

44.     By virtue of the foregoing, Plaintiff and the other members of the Securities Act Class are entitled to damages under Section 11 as measured by the provisions of the Section 11(e), from the defendants and each of them, jointly and severally.

//

//

## COUNT II

### Against Hendrickson and King For
### Violation of Section 15 of the Securities Act
### on Behalf of the Securities Act Class

45.    Plaintiff incorporates by reference each and every allegation contained above, as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or intent of the defendants to defraud Plaintiff or members of the Securities Act Class.

46.    This Count is asserted against Defendants Hendrickson and King ("Count II Defendants") on behalf of the Securities Act Class.

47.    For the reasons set forth above in Count I, above, SKH is liable to the Plaintiff and the members of the Securities Act Class who purchased SKH Class A common stock in the IPO based on the untrue statements and omissions of material fact contained in the Registration Statement and Prospectus, pursuant to Section 11 of the Securities Act, and were damaged thereby.

48.    The Count II Defendants were control persons of SKH by virtue of, among other things, their positions as senior officers of the Company, and they were in positions to control and did control, the misstatements and omissions contained in the Registration Statement and Prospectus.

49.    None of the Count I Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects.  Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

50.    This action was brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after SKH common stock was sold to the Class in connection with the IPO.

51.    By reason of the misconduct alleged herein, for which SKH is primarily liable, as set forth above, the Count II Defendants are jointly and severally liable with and to the same extent as SKH pursuant to Section 15 of the Securities Act.

### COUNT III

**Against the SKH and the Underwriters For Violation of**

**Section 12(a)(2) of the Securities Act on**

**Behalf of the Securities Act Class**

52.    Plaintiff incorporates by reference each and every allegation contained above, as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or intent of the defendants to defraud Plaintiff or members of the Securities Act Class.

53.    This Count is asserted against SKH and the Underwriter Defendants.

54.    The Registration Statement and Prospectus contained untrue statements of material facts, failed to state other facts necessary to make the statements not misleading, and concealed and failed to disclose material facts. SKH and the Underwriters actions of solicitation included participating in the preparation of the false and misleading Registration Statement and Prospectus.

55.    SKH and the Underwriters owed to the purchases of SKH shares which were sold in the IPO the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus, to ensure that such statements were true and that there was no failure to state a material fact required to be stated in order to make the statements contained therein no misleading.  SKH and the Underwriters knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the Registration Statement and Prospectus as set forth above.

56.    Plaintiff and other members of the Securities Act Class purchased or otherwise acquired the stock of SKH pursuant to and traceable to the defendant Registration Statement and Prospectus.  Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Registration Statement and Prospectus.

57.    Plaintiff, individually and representatively, hereby offers to tender to SKH and the Underwriters those securities which Plaintiff and other Securities Act Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return of the consideration paid for those securities together with interest thereon.

58.    By reason of the conduct alleged herein, SKH and the Underwriters violated, and/or controlled a person who violated, §12(a)(2) of the Securities Act.  Accordingly, Plaintiff and members of the Securities Act Class who hold SKH shares purchased in the IPO have the right to rescind and recover the consideration paid for their SKH shares and, hereby elext to rescind and tender their SKH shares to defendants sued herein.

59.    Securities Act Class members who have sold their SKH shares are entitled to rescissory damages.

60.    This action was brought within one year after the discovery of the untrue statements and omissions and within three years after the IPO.

## COUNT IV

**Against All Defendants Except the Underwriters For Violation of**

**Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated**

**Thereunder On Behalf of the Exchange Act Class**

61.    Plaintiff incorporates by reference each and every allegation contained above, as if fully set forth herein.

//

//

62.    This Count is asserted against Defendants SKH, Hendrickson, Ghose, and King (as used in this Count, collectively "Defendants" or "Exchange Act Defendants").

63.    During the Exchange Act Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Exchange Act Class members, as alleged herein; and (2) cause Plaintiff and other members of the Exchange Act Class to purchase SKH's common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

64.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for SKH's  common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

65.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of SKH as specified herein.

66.    These Defendants employed devices, schemes and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SKH value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1    statements of material facts and omitting to state material facts necessary in
2    order to make the statements made about SKH and its business operations and
3    future prospects in the light of the circumstances under which they were made,
4    not misleading, as set forth more particularly herein, and engaging in
5    transactions, practices and a course of business that operated as a fraud and
6    deceit upon the purchasers of SKH Class A common stock during the Exchange
7    Act Class Period.

8    **FALSE AND MISLEADING STATEMENTS**

9    67.    On August 7, 2007 SKH issued a press release announcing the
10   Company's Q2 ended June 30, 2007 financial results.    The Company
11   announced net loss of $1.553 million before accretion on preferred stock and
12   $4.136 million net loss with the accretion.

13   68.    On August 9, 2007 the Company filed with the SEC its Q2 2007
14   financial statements on Form 10-Q.    The 10-Q repeated and reiterated the
15   Company's press announcement.    The 10-Q was certified pursuant to the
16   Sarbanes-Oxley Act of 2002 ("SOX") by defendants King and Hendrickson
17   attesting to the accuracy of the 10-Q.

18   69.    The Company's announcements about its Q2 2007 were false
19   when made because according the Restated 10-K, net loss for Q2 2007 was
20   underreported by $500,000.

21   70.    In an 8-K filed with the SEC on November 30, 2007, the Company
22   announced that defendant King and the Company mutually agreed to terminate
23   King's continued employment as the Company's CFO and Treasurer effective
24   in March 2008 and that defendant Ghose would replace King as CFO.

25   71.    On February 29, 2008 the Company filed its annual report for the
26   fiscal year ended December 31, 2007 with the SEC on Form 10-K.    For FY
27   2007 the Company reported net income of $17.149 million excluding accretion
28   on preferred stock and $9.795 million of net income with accretion.    Defendants

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

King and Hendrickson signed SOX certifications attesting to the accuracy of the 10-Q.

72.    The Company's announcements about its FY 2007 results were false when made because according the Restated 10-K, net income for FY 2007 was overstated by $1.8 million.

73.    On May 6, 2008 the Company issued a press release announcing its Q1 ended March 31, 2008 results.  The Company reported net income of $8.444 million.

74.    On May 7, 2008 the Company filed with the SEC its Q1 2008 financial statements on Form 10-Q.  The 10-Q repeated and reiterated the Company's press announcement.  Defendants Ghose and Hendrickson signed SOX certifications attesting to the accuracy of the 10-Q.

75.    The Company's announcements about its Q1 2008 results were false when made because according the Restated 10-K, net income for Q1 2008 was overstated by $500,000.

76.    On August 5, 2008 the Company issued a press release announcing its Q2 2008 financial results.  The Company reported net income of $8.924 million.  That same day the Company filed with the SEC its Q2 2008 results on Form 10-Q. Defendants Ghose and Hendrickson signed SOX certifications attesting to the accuracy of the 10-Q.

77.    The Company's announcements about its Q2 2008 results were false when made because according the Restated 10-K, net income for Q2 2008 was overstated by $700,000.

78.    On November 6, 2008 the Company issued a press release announcing its Q3 2008 financial results.  The Company reported net income of $9.576 million.  That same day the Company filed with the SEC its Q3 2008 results on Form 10-Q. Defendants Ghose and Hendrickson signed SOX certifications attesting to the accuracy of the 10-Q.

79.    The Company's announcements about its Q3 2008 results were false when made because according the Restated 10-K, net income for Q3 2008 was overstated by $1 million.

80.    On February 10, 2009 the Company issued a press release announcing its fiscal year 2008 financial results.   The Company reported $37.209 million of net income for FY 2008. Defendants Ghose and Hendrickson signed SOX certifications attesting to the accuracy of the 10-K.

81.    The Company's announcements about its FY 2008 results were false when made because according the Restated 10-K, net income for FY 2008 was overstated by $3.1 million.

82.    On May 5, 2009 the Company issued a press release announcing its financial results for Q1 2009. The Company reported net income of $10.867 million.  That same day the Company filed with the SEC its Q1 2009 results on Form 10-Q. Defendants Ghose and Hendrickson signed SOX certifications attesting to the accuracy of the 10-Q.

83.    The Company's announcements about its Q1 2009 results were false when because according the Company's amended quarterly report Q1 2009 filed with the SEC on June 29, 2009 (the "Restated 10-Q"), the Company's net income was overstated by $864,000.

**THE TRUTH EMERGES**

84.    On June 9, 2009, after market close, the Company issued a press release announcing that its historical financial statements for the annual and quarterly periods from January 1, 2006 through March 31, 2008 can no longer be relied upon as a result of errors identified by the Company.   The announcement states in relevant part:

> Skilled Healthcare Group Announces Expected Financial
> Restatement Related to Accounts Receivable Reserves

FOOTHILL RANCH, Calif. — (BUSINESS WIRE) — June 9, 2009 — Skilled Healthcare Group, Inc. (NYSE: SKH) today announced that, based on a preliminary review by management, the Company expects to restate its consolidated financial statements for the quarterly and annual periods from January 1, 2006 through March 31, 2009. As a result, the Audit Committee of the Board of Directors today has concluded that investors should no longer rely on the Company's historical financial statements nor the reports of Ernst & Young LLP, the Company's independent registered public accounting firm, for those affected periods.

The expected restatement relates to understated reserves for accounts receivables in each of the affected quarters. Based on the Company's preliminary analysis, the Company expects that the correction of the understatement is likely to require cumulative charges against after-tax earnings in the aggregate amount of between $8 million and $9 million over the affected periods. The actual amounts of the adjustments to be made in each of the affected periods are being determined by management. The adjustments will be audited by year and reviewed by quarter by Ernst & Young LLP.

Management identified the errors through an internal review of its reserves for accounts receivable. The errors appear to have resulted from improper dating of accounts receivables by a former employee who appears to have acted in ways that were inconsistent with the Company's accounting policies and practices. With the oversight of the Audit Committee, the Company has initiated a special investigation with respect to the areas in which the former employee was involved, as well as a review of what steps, if any, may be appropriate to ensure future compliance with the Company's accounting policies and practices relating to accounts receivable reserves.

The Company will file its restated financial statements with the Securities and Exchange Commission as soon as practicable following completion of the Audit Committee's investigation. The Company is updating its 2009 full year guidance solely to reflect the correction in its accounts receivable reserves. The Company now expects full year EBITDA to be between $121

million and $126 million and EBITDAR to be between $140 million and $145 million. Earnings per diluted share are expected to be between $1.02 and $1.08. EBITDA and EBITDAR reflect the non-GAAP adjustments to net income that are detailed in the table below, which reconciles forecasted net income to forecasted EBITDA and EBITDAR.

85.    The June 9, 2009 caused the Company's stock to fall from a prior closing price of $8.34 to $7.58, or 9.11%, on June 10, 2009.

86.    On June 29, 2009 the Company filed with the SEC the Restated 10-K and the Restated 10-Q setting forth the specific line-item restatement adjustments for each of the Company's periodic reports during the Class Period.

87.    Had Plaintiff and the Exchange Act Class been aware of this adverse information they would no have purchased the Company's securities at all or would not have purchases such securities at the artificially inflated prices at which they did.

## APPLICABILITY OF THE PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

88.    At all relevant times, the market for SKH's common stock was an efficient market for the following reasons, among others:

(a)    SKH's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    During the class period, on average, several hundreds of thousands of shares of SKH stock were traded on a weekly basis, demonstrating a very active and broad market for SKH stock and permitting a *very strong* presumption of an efficient market;

(c)    As a regulated issuer, SKH filed with the SEC periodic public reports during the Class Period;

(d)    SKH regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press

1  releases on the national circuits of major newswire services and other wide-
2  ranging public disclosures, such as communications with the financial press
3  and other similar reporting services;

4      (e)    SKH was followed by several securities analysts employed by
5  major brokerage firms who wrote reports that were distributed to the sales
6  force and certain customers of their respective brokerage firms during the
7  Class Period. Each of these reports was publicly available and entered the
8  public marketplace;

9      (f)    Numerous NASD member firms were active market-makers in
10 SKH stock at all times during the Class Period; and

11     (g)    Unexpected material news about SKH was rapidly reflected in and
12 incorporated into the Company's stock price during the Class Period.

13     89.    As a result of the foregoing, the market for SKH's common stock
14 promptly digested current information regarding SKH from all publicly
15 available sources and reflected such information in SKH's stock price. Under
16 these circumstances, all purchasers of SKH's common stock during the Class
17 Period suffered similar injury through their purchase of SKH's common stock
18 at artificially inflated prices, and a presumption of reliance applies.

19 **NO SAFE HARBOR**

20     90.    The statutory safe harbor provided for forward-looking statements
21 under certain circumstances does not apply to any of the allegedly false statements
22 pleaded in this Complaint. Many of the specific statements pleaded herein were not
23 identified as "forward-looking statements" when made. To the extent there were any
24 forward-looking statements, there were no meaningful cautionary statements
25 identifying important factors that could cause actual results to differ materially from
26 those in the purportedly forward-looking statements. Alternatively, to the extent that
27 the statutory safe harbor does apply to any forward-looking statements pleaded
28 herein, Defendants are liable for those false forward-looking statements because at the

time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of SKH who knew that those statements were false when made.

91.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing from the investing public SKH's operating condition and future business prospects and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

92.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SKH's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of SKH's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Exchange Act Class

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

acquired SKH common stock during the Class Period at artificially high prices and were or will be damaged thereby.

93.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

94.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Exchange Act Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

95.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT V

### Against All Individual Defendants For

### Violation of Section 20(a) of the Exchange Act

### on Behalf of the Exchange Act Class

96.    Plaintiffs repeated and re-alleges each and every allegation contained above as if fully set forth herein.

97.    This Count is asserted against Defendants Hendrickson, King and Ghose (as used in this Count, collectively "Individual Defendants").

98.    The Individual Defendants acted as controlling persons of SKH within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and

1    misleading.   The Individual Defendants were provided with or had unlimited
2    access to copies of the Company's reports, press releases, public filings and
3    other statements alleged by Plaintiff to have been misleading prior to and/or
4    shortly after these statements were issued and had the ability to prevent the
5    issuance of the statements or to cause the statements to be corrected.

6         99.   In particular, each of these Defendants had direct and supervisory
7    involvement in the day-to-day operations of the Company and, therefore, is
8    presumed to have had the power to control or influence the particular
9    transactions giving rise to the securities violations as alleged herein, and
10   exercised the same.

11        100.  As set forth above, SKH and the Defendants each violated Section
12   10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

13        101.  By virtue of their positions as controlling persons, the Individual
14   Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a
15   direct and proximate result of Defendants' wrongful conduct, Plaintiff and other
16   members of the Class suffered damages in connection with their purchases of
17   the Company's common stock during the Class Period.

18        102.  This action was filed within two years of discovery of the fraud
19   and within five years of each plaintiff's purchases of securities giving rise to the
20   cause of action.

21        **WHEREFORE**, Plaintiff prays for the relief and judgment, as follows:

22             (a)    Determining that this action is a proper class action,
23   designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class
24   representative for both the Securities Act Class and Exchange Act Class under
25   Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead
26   Counsel;

27             (b)  Awarding compensatory damages in favor of Plaintiff and the
28   other Class members against all Defendants, jointly and severally, for all

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1  damages sustained as a result of Defendants' wrongdoing, in an amount to be
2  proven at trial, including interest thereon;

3        (c)  Awarding plaintiff and the Class their reasonable costs and
4  expenses incurred in this action, including counsel fees and expert fees; and

5        (d)  Such other and further relief as the Court may deem just and
6  proper.

7                    **JURY TRIAL DEMANDED**
8        Plaintiff hereby demands a trial by jury.

9

10  Dated: July 24, 2009                Respectfully submitted,

11

12                    **CATANZARITE LAW CORPORATION**

13

14

15                    Kenneth J. Catanzarite, Esq. (SBN 113750)
16                    2331 West Lincoln Avenue
                      Anaheim, CA 92801
17                    Tel: (714) 520-5544
                      Fax: (714) 529-0680
18                    kcatanzarite@catanzarite.com

19
                      and
20

21                    Laurence Rosen, Esq. (SBN # 219683)
                      Phillip Kim, Esq.
22                    **THE ROSEN LAW FIRM, P.A.**
23                    350 Fifth Avenue, Suite 5508
                      New York, New York 10118
24                    Tel: (212) 686-1060
                      Fax: (212) 202-3827
25                    lrosen@rosenlegal.com
26

27                    Counsel for Plaintiff
28

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Skilled Healthcare Group, Inc. ("SKH") and certain of its current and former officers and directors. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against SKH and certain of its officers, authorize its filing, and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following is a list of all of the purchases and sales I have made in SKH securities during the Class Period set forth in the complaint. I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 165 | 5/18/09 | $ 9.399 | 6/19/09 | $ 7.125 |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM: (212) 202-3827

5.    I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.    I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _7/13/09_ day of _July_, 2009.

REDACTED

nature: _Thomas A. Shepardson_
name: _Thomas A. Shepardson_
address: ███████████████████████
phone: ███████████████████████
email: ███████████████████████

Item. 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR MAIL TO:
THE ROSEN LAW FIRM PA
350 FIFTH AVENUE, SUITE 5508
NEW YORK, NY  10118

2