O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SKILLED HEALTHCARE GROUP, INC. SECURITIES LITIGATION, | CASE NO. CV 09-5416 DOC (RZx)<br><br>**O R D E R** GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION, AND REQUEST FOR ATTORNEYS FEES AND COSTS |

Before the Court is a Motion for Final Approval of Class Action Settlement, including approval of the Plan of Allocation (Docket 82) as well as a Motion for Attorneys Fees and Costs (Docket 84) filed by Lead Plaintiffs, the City of Livonia Employees' Retirement System and Jerry Pelke Jr. ("Plaintiffs") in the above-captioned case.

**I.   BACKGROUND**

Plaintiffs represent a class of people who purchased Skilled Healthcare securities between May 14, 2007 and June 9, 2009, inclusive. According to Plaintiffs, throughout the class period, Skilled Healthcare materially misrepresented the company's income and earnings, resulting in an artificially inflated stock price for Skilled Healthcare securities. Plaintiffs contend that Skilled Healthcare engaged in the above-described misrepresentations either knowing their statements to be false or with reckless disregard for the possibility that they were false. The class members

purportedly suffered injury as a result of the artificial inflation and later deflation of Skilled Healthcare's stock prices.   Defendants deny each of Plaintiffs' allegations.

Following full briefing on Defendants' motion to dismiss and the filing of a Joint Rule 26(f) Report, both parties agreed to submit to mediation by professional mediator Hon. Edward A. Infante (Ret.).  On August 4, 2010, after a full day of arms-length negotiations, the parties agreed to seek Court approval to settle this case.

The Court granted preliminary settlement approval and authorized the mailing of class notice on September 13, 2010 ("Preliminary Approval Order") (Docket 79).   After the mailing of 9,222 claims packets and publication of the settlement in *Investors Business Daily* and through *PR Newswire*, one class objected to the settlement and two attempted to exclude themselves from it.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires the Court to approve a class action settlement.  "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The first step is to assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997)).  A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).  Under Federal Rule of Civil Procedure 23(b)(3), the Court also must consider whether common questions of law and fact predominate, as well as whether the class action offers a superior method of adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3)**.**

Once the court certifies a settlement class, approval of the settlement terms rests in the sound discretion of the district court. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).  Under Federal Rule of Civil Procedure 23(e), the settlement, taken as a whole, must be

(1) fundamentally fair, (2) adequate, and (3) reasonable to the Class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). To determine whether a settlement is fair, courts look to the following factors for guidance: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court must also bear in mind that judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Pacific Enterprises Securities Litigation*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

## VI. DISCUSSION

### Class Certification

On September 13, 2010, the Court provisionally certified the settlement class for the purpose of mailing class notice. Plaintiffs now request that the Court grant class certification for the purpose of implementing the settlement. The parties define the proposed class as "all persons other than Defendants who purchased Class A common stock of Skilled Healthcare pursuant to and/or traceable to the Company's Registration Statement and Prospectus issued in connection with the Company's Initial Public Offering on May 14, 2007, seeking to pursue remedies under the Securities Act; and (2) all persons other than Defendants who purchased the class A common stock of Skilled Healthcare between May 14, 2007 and June 9, 2009, inclusive, seeking to pursue remedies under the Exchanges Act." Pl.'s Mot. at 19. Excluded from the settlement class are "the Defendants; members of Defendants' immediate families; all individuals who are either current officers and/or directors, or who served as officers and directors at any time during the Settlement Class Period of any of the Defendants; Defendants' subsidiaries; any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant had a controlling interest or any entity which is related to or affiliated with any Defendant." *Id.*

3

As set forth above, the factors bearing on the propriety of class certification include (1) the numerosity of the purported class (2) the commonality of the class members' allegations (3) the typicality of the class representative's claims (4) the adequacy of the class representative's representation (5) whether common questions of law and fact predominate in the action and (6) whether a class action offers a superior method of resolving the litigation. *Hanlon*, 976 F.2d at 508; Fed. R. Civ. P. 23. The Court will address each of these issues in turn.

**Numerosity**

Plaintiffs submit that, during the class period, over 37 million shares of Skilled Healthcare common stock were purchased. This high number, which suggests a high number of possible class members, suffices to prove numerosity.

**Commonality**

Absent settlement, resolution of this case would turn on whether Defendants violated the Securities and Exchanges Act. Specifically, were this case to proceed to trial, a fact-finder would need to determine whether documents issued by Defendants misrepresented material facts and whether the eventual disclosure of the Defendants' misrepresentations deflated the value of Skilled Healthcare securities. These questions underlie each class member's claim. The commonality requirement is met.

**Typicality**

Like the absent class members, Lead Plaintiffs allegedly purchased Skilled Healthcare stock at an artificially inflated price, due to yet-to-be disclosed misrepresentations made by Defendants during the class period. Lead Plaintiffs' position is typical to that of the absent class members on the central, disputed issue of the case. Typicality thus exists.

**Adequacy of Representation**

Regarding the requirement that the named representative fairly and adequately protect the interests of the class, Lead Plaintiffs assert that they have vigorously prosecuted this action, aggressively negotiated with Defendants and obtained a settlement that recoups a significant percentage of the losses suffered by the class. Moreover, Lead Plaintiffs contend that they retained highly qualified counsel with extensive experience in securities litigation. A review of

Class Counsels' resumes indeed indicates a great deal of experience in securities law, with attorneys having worked in this area of litigation on both the plaintiff and defense side.

### Common Questions of Law and Fact Predominate

In determining whether common questions of law and fact predominate, the Court again emphasizes the need, common to all class members, to determine whether provisions of the Securities and Exchanges Act were violated by Defendants, whether documents issued by Defendants to the public misrepresented material facts, and whether disclosure of the Defendants' alleged misrepresentations resulted in a decline in the price of Skilled Healthcare securities. Common questions of law and fact predominate in this action.

### Superiority

Finally, a class action offers the superior method of resolving this dispute. Although the total amount of alleged damage in this case is significant, per-person damages are relatively low. As a result, most class members would regard individual actions as economically infeasible. By allowing class members to combine their claims, the class action offers the best means of addressing Defendants' alleged violations of the Securities and Exchanges Act.

As each of the appropriate factors weighs in favor of class certification, the Court GRANTS class certification for the purposes of settlement.

### **Fairness of the Settlement**

### **Settlement Terms**

The parties propose a total settlement amount of $3,000,000 and accrued interest. Before the deduction of any court-approved attorneys' fees or costs, the total settlement amount provides for a recovery of $0.15 per damaged share. The proposed settlement amount represents approximately twenty percent of the Class's estimated maximum damages. The parties propose to allocate the total settlement amount according to a distribution plan that reflects (a) the date each class member purchased its shares of Skilled Healthcare securities, and (b) whether the class members sold such shares during or after the Class Period and, if so, when. The calculations shall be conducted with the assistance of an experienced damages expert.

Plaintiffs submit that, in light of the substantial risks associated with continuing this case, a $3,000,000 gross settlement amount constitutes an excellent recovery for the settlement class. According to Plaintiffs, $3,000,000 represents twenty percent of the class's *maximum* possible damages were Plaintiffs to prevail on every disputed issue at trial. In addition to the inherent risks of litigation, Plaintiffs note the specific problems of proof under, and possible defenses to, the securities law violations alleged in this suit, especially with respect to scienter and loss causation. Plaintiffs also point to the precarious nature of Skilled Healthcare's current financial position, explaining that a substantial jury verdict in a different case was recently entered against the company. As a result of this verdict, Plaintiffs worry that prolonging this action entails a significant risk of not recovering anything at all – even if Plaintiffs were to prevail in full at trial. Plaintiffs' position appears to be well-considered. In light of the risks of proceeding, accepting a settlement fund that recoups twenty percent of the class's estimated *maximum* possible damages seems a sound choice.

The Court also notes that only one class member filed an objection to the proposed settlement and only two opted to exclude themselves from the settlement class. The views of absent class members bear on the fairness of a settlement. *Staton,* 327 F.3d at 959. In this case, the Court interprets the lack of anything other than a de minimus objection as ratification of the settlement terms by the class.

In light of the above, the Court finds that the proposed settlement is (1) fundamentally fair, (2) adequate, and (3) reasonable to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1026.

**Plan of Allocation**

Plaintiffs ask the Court to approve the proposed plan of allocation to be used in order to determine the amount of each absent class member's recovery. The parties have agreed to use an independent expert in order to allocate damages among the absent class members. In calculating each class member's award, the proposed plan of allocation takes into account (a) the date each class member purchased its shares of Skilled Healthcare securities, and (b) whether the Class Members sold such shares during or after the Class Period and, if so, when. Given the

dynamic nature of stock prices, the Court agrees with the parties that the specific damages incurred by each absent class member varies according to the date that each class member purchased and sold its Skilled Healthcare shares. Shaping each class member's recovery around these factors is only fair. *See In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable. It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits."). The Court also approves of the parties' decision to use an independent damages expert in order to fairly calculate each class member's share of the award.

In light of the above, the Court GRANTS final approval of the proposed settlement terms, including approval of the proposed plan of allocation.

**Attorney's Fees and Costs**

Class Counsel requests an award of $750,000 in attorneys fees as well as $81,275.28 in costs. The proposed attorneys fee award equals twenty-five percent of the total settlement value. Class Counsel further submits that its $750,000 fee request represents more than a twenty-five percent reduction from its lodestar. According to records submitted in support of the fee award, Class Counsel spent 2,102 hours litigating and settling this case – an amount of work valued at over $900,000 if calculated in accordance with Class Counsel's typical hourly rate. The approved class notice included a statement that Class Counsel planned to seek an attorneys fee award of up to twenty-five percent of the total settlement fund as well as reimbursement for up to $95,000 in costs. The notice further explained that the class's per-share recovery would be reduced if the Court agreed to grant attorneys fees and costs. The notice indicated that, were the Court to award attorneys fees totaling twenty-five percent of the settlement amount and fees totaling $95,000, the estimated per share recovery would decrease from $0.15 to $0.105.

Court-approved attorneys fees must be "reasonable" under the circumstances of the case. *Paul, Johnson, Alston, and Hunt v. Grundy*, 886 F.2d 268, 271 (9th Cir. 1988). *See also* Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(6) (allowing attorneys fees constituting a "reasonable percentage" of the class members' recovery). In *Grundy*, the Ninth Circuit stated

7

that reasonable attorneys fees usually will be equal to or lesser than twenty-five percent of the total settlement award. The requested attorneys fees in this case fall at the high end of the Ninth Circuit's twenty-five percent benchmark.

Awarding attorneys fees at the high end of this range is warranted in this case. It bears noting that no class member objected to a $750,000 attorneys fee award, even though the effect of this award on the class members' recovery was spelled out in the class notice. Moreover, the time logs submitted in support of the fee award indicate that Class Counsel devoted significant time to this case, reviewing extensive disclosure statements, consulting with experts, interviewing witnesses, opposing a complex motion to dismiss, participating in settlement conferences and executing a settlement. A review of Class Counsel's resumes indicates a wealth of experience in securities litigation on both the defense and plaintiff side. Class Counsel had as its adversary a multinational, respected defense firm with expertise in securities litigation. As discussed above, in light of the risks associated with this case, negotiating a settlement that recovers twenty percent of the class's estimated maximum possible damages is a significant achievement. For their time, expertise and solid performance, Class Counsel deserves substantial compensation.

The Court therefore GRANTS Class Counsel's request for $750,000 in fees.

The Court similarly approves Class Counsel's request for $81,275.28 in costs. The class notice indicated that up to $95,000 in costs might be deducted from the settlement award and explained the impact of this possible deduction on the class's per share recovery. No class member objected to this request for costs. In addition, a review of the accounting submitted in support of Class Counsel's request for costs includes sufficient detail and reveals no irregularities warranting reduction of the amount sought.

The Court therefore GRANTS Class Counsel's request for $81,275.28 in costs.

**Objections**

One absent class member, Marc Greenlee ("Greenlee"), objected to the settlement by mailing his objection to the Claim Administrator on November 5, 2010. Decl. of L. Rosen, Exh. 2. Greenlee objects to an attorneys fee award of 25%, submitting that "at most the attorneys

should get 10% of this settlement, plus costs." Greenlee also lodges generalized objections to the adequacy of the settlement, asserting that Defendants ought be held liable for a significantly larger sum. Greenlee supports neither of his objections with specific facts or legal theories. Regarding attorneys fees, the Court is not inclined to stray from the Ninth Circuit's twenty-five percent benchmark based on a lone objection unsupported by specific facts. With respect to Greenlee's position that Defendant should be required to pay more money in order to settle the case, the Court notes that the fairness of a proposed settlement must not "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Greenlee's hope for a greater settlement amount – a desire unsupported by specific facts – appears to be based on little more than hypothesis or speculation. Greenlee's objection is overruled.

**Exclusions**

The parties also received two attempted requests for exclusion, one from Koch Companies Public Sector, LLC ("Koch") and one from P. Susan Steele ("Steele"). Rosen Decl., Exhs. 3, 4. Pursuant to the Stipulation of Settlement, approved by the Court in its Preliminary Approval Order, individuals seeks exclusion from the settlement class must submit a letter specifying "each of the Person's purchases and sales of [Skilled Healthcare] common stock made during the Class Period, including the dates of purchase or sale, the numbers of shares purchased and/or sold and the price paid for received per share for each such purchase or share." Requiring opt-outs to provide this information is a negotiated part of the settlement agreement and is important to Defendants who need to know that they are resolving all or an adequate percentage of their potential liability. Neither Koch nor Steele have provided the requested information in their purported request for exclusion – even after the Claims Administrator personally contacted these parties and asked them to do so. Rosen Decl., ¶ 8.

The Court hereby ORDERS that Koch and Steele will have until 5pm on February 15, 2011 to submit the information discussed above to the Claims Administrator. If Koch and Steele supply the necessary information by that time, their requests for exclusion will be GRANTED.

9

If Koch and Steele do not supply the necessary information by that time, their request for exclusion will be DENIED.

By March 1, 2011 the parties shall submit a memorandum informing the Court of the status of Koch and Steele's exclusion. In the memorandum, the parties shall also inform the Court of the effect, if any, of Koch and Steele's status on the parties request for settlement approval.

## V. DISPOSITION

For the foregoing reasons, the Court hereby:

GRANTS final settlement approval including approval of the plan of allocation

GRANTS approval of $750,000 in attorneys fees

GRANTS approval of $81,275.28 in costs

IT IS SO ORDERED.
DATED: January 26, 2011

_____
DAVID O. CARTER
United States District Judge